**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Clayton Ristrom,

Plaintiff,

v.

Asbestos Workers Local 34
Joint Apprenticeship Committee,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-1901 ADM/AJB

---

Stephen C. Fiebiger, Esq., Stephen C. Fiebiger & Associates, Burnsville, MN, appeared on behalf of Plaintiff.

Kelly A. Jeanetta, Esq., Miller-O'Brien, Minneapolis, MN, appeared for and on behalf of Defendant.

---

## I. INTRODUCTION

The above-entitled action is before the undersigned United States District Judge pursuant to Defendant Asbestos Workers Local 34 Joint Apprenticeship Committee's ("JAC" or "Defendant") Motion for Summary Judgment [Docket No. 8]. On November 25, 2002, counsel presented oral arguments in this matter, which arises from Plaintiff Clayton Ristrom's ("Plaintiff") allegations of disability discrimination, as prohibited by the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213. Plaintiff argues he was unlawfully cancelled from his apprenticeship because of his learning impairments. Defendant contends Plaintiff is not disabled within the meaning of the ADA and that he was dismissed from the program for legitimate, lawful reasons. For the reasons stated below, Defendant's Motion is granted.

FILED 2-18-03
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD 2-18-03
DEPUTY CLERK

## II. BACKGROUND

This dispute arises from Plaintiff's association with a union apprenticeship administered by the Defendant. The JAC is charged with operation of and control over the Twin Cities Area Asbestos Workers Apprenticeship program (the "Program"), which offers apprentices the opportunity to earn union journeyman status and the substantially higher wages associated with being a journeyman. The JAC is comprised of four members, two representing management and two representing the labor union. The Twin Cities Area Asbestos Workers Apprenticeship Standards ("Standards") govern the Program and the rights and responsibilities of the involved parties. See Standards (Ristrom Dep. Ex. 2). The Program requires minimum hours of both on-the-job and classroom training, which are typically completed in four years. Id. at 8. Courses were held Saturdays from 8 a.m. to 2:30 p.m. during the school term of September to March, each year.

Each apprentice admitted to the Program signs an Apprenticeship Agreement ("Agreement") that incorporates the Standards. See Agreement (Ristrom Dep. Ex. 1). Pursuant to the terms of the Standards, the JAC has authority to discipline apprentices who fail to comply with the Program requirements. Standards at 13. Discipline is at the discretion of the JAC and may include suspension, temporary removal from a job or cancellation of the apprenticeship. Id.; see also id. at 16 ¶ 11. To complete the Program, apprentices must achieve passing grades in all courses and are required to attend all classroom sessions, with a maximum of 12 hours of make-up time available for absences. Id. at 16.

Plaintiff began the Program on September 6, 1995. Between October, 1995, and January, 1996, Plaintiff missed a number of full and partial days of work and was terminated by his

employer for absenteeism. Ristrom Dep. at 45. The JAC called Plaintiff to a meeting on February 13, 1996, and reprimanded him for these absences from the job. Id. Exs. 4, 6. With assistance from the Union and the JAC, Plaintiff was able to find new employment within a few days. Ristrom Dep. at 48. Plaintiff then successfully completed the first and second years of the Program, passing the course examinations and advancing to his third year, which began in the fall of 1997. Id. at 47, 50.

Plaintiff was again summoned before the JAC February 10, 1998, to respond to reports of unsatisfactory workmanship made to the JAC by his employer. Ristrom Dep. Exs. 9, 10. The JAC agreed to defer action on the issue until the end of the term. Ristrom Dep. Ex. 10. At this time, Plaintiff began to experience problems with his course work. He claims he sought but was denied additional assistance from Lee Houske, the instructor of the blueprint reading and pattern development courses with which Plaintiff was having difficulty. Plaintiff acknowledges that JAC member Mark Morgan ("Morgan") tutored Plaintiff in pattern development at Morgan's home on three to five occasions from about February to March, 1998. During these tutoring sessions, Plaintiff discussed some of his personal life with Morgan, telling him that he had Attention Deficit Disorder ("ADD"), that he was having marital difficulties, and that he was taking the prescription drug Zoloft for depression. When Plaintiff did not receive passing grades at the end of the spring semester, the JAC summoned him to a meeting on April 14, 1998, to discuss problems with his course work.

At this time, the JAC voted for Plaintiff's suspension and postponed his advancement from the third to the fourth Program year, requiring him to re-take the third-year courses. Immediately after this meeting Plaintiff wrote a letter to the JAC stating his belief that the

decision of the JAC was unfair, based on the belated provision of additional assistance despite earlier requests by Plaintiff's father. Letter from Ristrom to JAC of 4/14/98 (Ristrom Dep. Ex. 12). Plaintiff expressed that he could rectify his deficiencies sufficiently to be prepared for the fourth year curriculum. Id. The letter did not advise the JAC that Plaintiff had or considered himself to have a learning disability. Id.

When Plaintiff returned to repeat his third year and began failing the course work for the second time, he requested an appearance before the JAC, which occurred on November 10, 1998. He presented the JAC a letter explaining that he continued to struggle with blueprinting and would like tutoring in the subject, and that he suspected he may have a learning disability. Letter from Ristrom to JAC of 11/10/98 (Ristrom Dep. Ex. 17). He informed the JAC that he had made an appointment for testing for such a possible disability and asked that it refrain from acting on his current problems until the evaluation was completed. Id. The committee agreed to do so.

The results of Plaintiff's testing revealed that he did not have ADD but that he showed signs of dysthymia, a type of depression. Letter of Armantina M. Espinosa, M.D. of 12/30/99 (Ristrom Dep. Ex. 18). He performed in the normal range in concentration and attention-sensitive tasks and a specific test for inattention was negative. Id.

The JAC had not yet received this information or any other communication from Plaintiff when he failed to attend his January 9, 1999 class. Therefore, the JAC again requested Plaintiff's presence at their upcoming meeting. At the meeting on January 19, 1999, Plaintiff informed the JAC of his psychological evaluation. He had previously faxed Dr. Espinosa's letter to Morgan, but Morgan had forgotten to bring it to the meeting and therefore summarized its content to the JAC. According to Plaintiff, the JAC refused to accommodate his request for individual tutoring

and simply continued his suspension, directing him to meet all third-year requirements by March 27, 1999, or face cancellation from the Program. The JAC asserts that it attempted to obtain various tutoring assistance for Plaintiff, but that he failed to report for this help, as well as again missing class January 23 and 30.

Due to these absences, the JAC required Plaintiff to appear at its February 9, 1999 meeting, at which time he provided a note retroactively excusing him from classes for possible depression and indicating a work-up in progress. The JAC then voted to cancel Plaintiff's membership in the Program, to be effective February 12, 1999, for failure to comply with the Standards. After his cancellation, Plaintiff sought further medical evaluation and obtained a preliminary diagnosis of ADD and depression on March 22, 1999. Letter of W. David Bailey, Psy. D. of 4/22/99 (Ristrom Dep. Ex. 27). Plaintiff alleges the JAC discriminatorily dismissed him from the Program because of these learning impairments. Defendant replies that it attempted to assist Plaintiff and wanted him to complete the apprenticeship but that he was cancelled because of his apparent lack of effort and abandonment of the Program.

## III. DISCUSSION

Summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). If evidence sufficient to permit a reasonable jury to return a verdict in favor of the nonmoving party has been presented, summary judgment is inappropriate. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). However, the nonmoving party may not "rest on mere allegations or denials, but

must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Id.

**A. Discrimination Under the ADA**

The ADA prohibits discrimination by a covered entity "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). To set forth a prima facie case under the ADA, Plaintiff must prove that he: 1) is disabled within the meaning of the ADA; 2) is qualified, with or without reasonable accommodation, to perform the essential functions of the position; and 3) has suffered an adverse employment action under circumstances creating an inference of unlawful discrimination. Dropinski v. Douglas County, 298 F.3d 704, 706 (8th Cir. 2002).

The parties dispute centers on whether or not Plaintiff can establish that he is disabled within the parameters of the ADA. Disability is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 948 (8th Cir. 1999). Plaintiff asserts all three definitions apply in this case.

Pursuant to EEOC regulations, "substantially limits" means the impairment renders the individual "unable to perform a major life activity that the average person in the general population can perform" or "significantly restricted as to the condition, manner or duration under which" such individual can perform a particular major life activity as compared to the average member of the general population. 29 C.F.R. § 1630.2(j)(1); Toyota Motoring Mfg. v. Williams, 534 U.S. 184, 195-96 (2002). In making this assessment, the court should consider "(1) the

nature and severity of the impairment; (2) its duration or anticipated duration; (3) and its long-term impact." Fjellstad, 188 F.3d at 949 (citing 29 C.F.R. § 1630.2(j)(2)(i)-(iii)); see also Toyota, 534 U.S. at 196. Whether or not an impairment is substantially limiting is judged on a case by case basis, making an "individualized assessment of the effect of [the] impairment" on the life of the particular plaintiff. Toyota, 534 U.S. at 199. A medical diagnosis of an impairment is insufficient, standing alone, to establish a disability. Id. at 198.

**a. Disability**

Defendant contends that even if Plaintiff has a mental impairment, it is not substantially limiting, and therefore he cannot meet the first prong of the prima facie case. Plaintiff avers that he is substantially limited in his ability to learn, due to ADD and depression.

To prove he is disabled under the ADA, Plaintiff must make three showings: 1) that he has an impairment; 2) that substantially limits; 3) a major life activity. See 42 U.S.C. § 12102(2)(A). Learning is a major life activity. 29 C.F.R. § 1630.2(i); Fjellestad, 111 F.3d at 948. With respect to establishing an impairment, construing the facts in Plaintiff's favor, he has met his burden of producing evidence sufficient to raise a question of fact regarding whether or not he possess a mental impairment, namely, depression and/or a learning disability based on attention deficiency. See 29 C.F.R. § 1630(h)(2) (including as impairments mental and emotional illnesses and "specific learning disabilities"). Though the first mental evaluations Plaintiff sought because of his concerns regarding his perceived problems with concentration and inattention concluded he did *not* have ADD, he eventually was given a preliminary diagnosis of the disorder. See Psychological Evaluation of Kristina Lund, Ph.D. of 4/19/94 (Ristrom Aff. Ex. A); Letter of Armantina M. Espinosa, M.D. of 12/30/99 (Ristrom Dep. Ex. 18); Letter of W.

David Bailey, Psy. D. of 4/22/99 (Ristrom Dep. Ex. 27). Further, he has presented evidence of his expressions to Defendant of his struggles with acquiring certain concepts and material, as well as psychological reports of depression and anxiety. See Letter from Ristrom to JAC of 4/14/98 (Ristrom Dep. Ex. 12); Letter from Ristrom to JAC of 11/10/98 (Ristrom Dep. Ex. 17); Psychological Evaluation of Kristina Lund, Ph.D. of 4/19/94 (Ristrom Aff. Ex. A); Return to Work Slip of 2/9/99 (Ristrom Dep. Ex. 26).

The inquiry, however, does not end here. To obtain relief under the ADA, Plaintiff must show such impairment is substantially limiting. Toyota, 534 U.S. at 195. Substantial "suggests 'considerable' or 'to a large degree.'" Id. at 196.

Plaintiff has failed to produce evidence to establish a genuine issue of fact on this question. Defendant argues that to date Plaintiff has never received a final diagnosis of ADD, but only a preliminary diagnosis, which occurred after he was canceled from the Program. Accordingly, Defendant never received any medical documentation of ADD while Plaintiff was enrolled in the Program. However, even assuming Plaintiff suffers from ADD, he has not shown that he was or is substantially limited in learning. Despite his allegations of difficulty in academic settings, beginning in the first grade, Plaintiff admits he graduated from high school, passed his vocational sales class, and that he earned passing grades on his apprenticeship course work and examinations, successfully completing the first two years of the apprenticeship program before failing to meet the requirements of the third-year curriculum. See Ristrom Dep. at 14-16, 50. He includes no explanation or evidence of how his overall ability to learn was *significantly* restricted in condition, manner or duration compared to the average person. See Fjellstad, 188 F.3d at 948-49. Presenting a medical diagnosis of depression and a preliminary

diagnosis of ADD does not prove Plaintiff is substantially limited in learning (and thus, disabled under the ADA). See Toyota, 534 U.S. at 198. Plaintiff's conclusory pronouncement that he is substantially limited in the major life activity of learning because he found certain subjects or educational contexts challenging or frustrating is insufficient to withstand summary judgment on this issue.

Plaintiff's focal assertion is that he cannot perform "certain course requirements for the third year study of the apprenticeship program." Pl.'s Mem. at 21. Without any disparagement of Plaintiff's difficulties with the blueprint and pattern development material, such specified, discrete areas of learning do not amount to a substantial impairment in the major life activity of learning, as a whole. See Leisen v. City of Shelbyville, 153 F.3d 805, 808 (7th Cir. 1998) (stating that plaintiff's failure to pass paramedic certification class did "not show that she was substantially limited in the major life activity of learning, any more than the fact that a particular individual might not be able to pass a course in physics or philosophy would allow an inference that all learning activity was substantially limited"); Li v. Intel Corp., 2002 WL 1060309, at *1 (9th Cir. May 15, 2002) (holding that plaintiff's inability to grasp specific material was not a substantial limitation on learning) (unpublished opinion); cf. Sutton v. United Air Lines, Inc., 527 U.S. 471, 492-93 (1999) (reciting that inability to perform one particular type of or specific job is not substantial impairment; plaintiff must show exclusion from a "a broad range of jobs"); Taylor v. Nimrock's Oil Co., 214 F.3d 957, 960 (8th Cir. 2000) (same). Accordingly, Plaintiff has not shown that he is disabled within the meaning of the ADA.

**b. Record of Disability**

Plaintiff also alleges he has a record of a disability, placing him within the ambit of the

ADA. A record of disability means an individual has a history of, or has been misclassified as having, a substantially limiting impairment. 29 C.F.R. § 1630.2(k); Taylor, 214 F.3d at 962. To prove such record, a plaintiff's "documentation must show" the history or misclassification of a disability. Taylor, 214 F.3d at 962 (internal quotation omitted). The Defendant, of course, must have been aware of the record of disability. Davidson v. Midelfort Clinic, 133 F.3d 499, 510 n.8 (7th Cir. 1998).

As support for his claimed record of disability, Plaintiff references his "long history of learning problems," including placement in special education classes, psychological reports of depression and anxiety, use of Zoloft, and eventual preliminary diagnosis of ADD and depression. While Plaintiff's medical records do establish a history of depression,[1] of which Defendant concedes it was aware, this claim suffers from the identical flaw as that above.

Establishing a record of a disability requires more than a record of an impairment; like proof of a disability itself, a record of a disability demands evidence of a substantial limitation in performance of a major life activity. See 42 U.S.C. § 12102(2); Tice v. Centre Area Transp. Auth., 247 F.3d 506, 513 (8th Cir. 2001). Plaintiff's proffered record of depression does not show substantial limitations in his learning activities. In fact, as stated above, he was able to complete high school and post-secondary courses, including two years of the apprenticeship program. Further, the psychological evaluations done in 1994 and 1998 did not identify deficits in attention and concentration. See Psychological Evaluation of Kristina Lund, Ph.D. of 4/19/94

[1] Plaintiff's March 22, 1999 preliminary diagnosis of ADD will not be considered as evidence of his record of disability because it is uncontested that this report was subsequent to Plaintiff's cancellation, defeating any assertion of Defendant's prior knowledge of this documentation.

(Ristrom Aff. Ex. A); Letter of Armantina M. Espinosa, M.D. of 12/30/99 (Ristrom Dep. Ex. 18). Plaintiff's history of frustration with certain courses does not amount to a record of a substantial limitation in his ability to learn.

**c. Regarded as Disabled**

Plaintiff further alleges that Defendant regarded him as disabled. He claims this is evident from Defendant's agreement to withhold action on his status in the Program until Plaintiff was able to be tested for learning disabilities. Defendant argues that equating assisting Plaintiff in his attempts to discern any potential learning disabilities with regarding him as disabled would render the law "ludicrous" by creating a disincentive to work with troubled persons and a trap for unwary employers that accommodate such requests.

One is regarded as having a disability when "(1) a covered entity mistakenly believes that a person has a[n] . . . impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton, 527 U.S. at 489. In assessing such claims, "the test is whether defendant treated plaintiff adversely because it regarded him as having an impairment that substantially limits one or more major life activities," not "whether defendant treated plaintiff adversely because of [its] feelings about the plaintiff's mental or physical impairment." Webber v. Strippit Inc., 186 F.3d 907, 915 (8th Cir. 1999). Thus, the perception of substantial limitation is key.

Plaintiff contends that Defendant's knowledge of his depression and intent to seek further evaluation regarding potential learning disabilities, in conjunction with its attempt to assist him by offering extracurricular tutoring, establishes that it regarded him as disabled. Defendant

counters that it believed Plaintiff was capable of completing the Program and perceived only that he was unwilling, not that he was unable, to do so.

A defendant's mere knowledge of a mental impairment does not establish that it regarded the plaintiff as disabled. Conant v. City of Hibbing, 271 F.3d 782, 786 (8th Cir. 2001). Defendant had knowledge that Plaintiff had advanced through two years of the Program without academic incident and that his problems with attendance and course failures began only in his third year, which they attributed to lack of effort or interest. See Morgan Dep. at 23, 53; Neuschwander Dep. at 30; Carmichael Dep. at 56. Plaintiff has produced no evidence that Defendant regarded him as being substantially limited in his ability to learn. Attempting to offer Plaintiff supplemental instruction on specific material and deferring action on Plaintiff's apprenticeship until he had an opportunity to receive psychological assessment do not suggest the Defendant regarded his overall ability to learn as substantially impaired. Cf. Taylor, 214 F.3d at 962 (finding that expressing concern to employee regarding employees "medical difficulties" does not amount to treating individual as disabled). Even if the JAC regarded Plaintiff as incapable of completing the blueprint and pattern development classes, perceiving an individual as unable to perform a particular task is not regarding that person as substantially limited in the broader major life activity of which the specific task is a part. See EEOC v. Woodbridge Corp., 263 F.3d 812, 816 (8th Cir. 2001) (articulating this proposition with respect to the life activity of working). Given this lack of proof, summary judgment is also appropriate on Plaintiff's "regarded as" claim.

**B. Retaliation**

Plaintiff also avers that Defendant retaliated against him for requesting reasonable

accommodations. The ADA proscribes discrimination against an individual because such person brought a claim under, or took other related actions covered by, the ADA. 42 U.S.C. § 12203(a). A prima facie case of retaliation under the ADA requires Plaintiff to show that he engaged in protected activity, that adverse action was taken against him by Defendant, and a causal connection between the two occurrences. Cossette v. Minnesota Power & Light, 188 F.3d 964, 972 (8th Cir. 1999).

Plaintiff argues Defendant canceled his apprenticeship in retaliation for his requests for additional assistance. This contention has no support in the record. By Plaintiff's own allegations, he initially sought help through his father's inquiries "as far back as November 1997," and he himself asked for tutoring in blueprint reading sometime between the beginning and middle of his third year of study, which began in the fall of 1998. Pl.'s Mem. at 7; Ristrom Dep. at 62. Plaintiff was not canceled from the Program until February 9, 1999, after various meetings, discussions, and suspensions regarding his absences and failure to complete the third-year curriculum. Such a time span marked by multiple actions short of cancelling Plaintiff's apprenticeship, including holding potential discipline in abeyance until Plaintiff was able to seek the testing he desired, indicates a willingness to assist Plaintiff rather than a reprisal for Plaintiff's request of assistance.

Moreover, Plaintiff concedes Mark Morgan tutored him outside of class at Morgan's home when Plaintiff first began experiencing problems with the third-year curriculum. Ristrom Dep. at 58-59. Defendant asserts that other individuals also offered Plaintiff supplemental instruction several times, but that he declined. Houske Dep. at 21-22, 24-26; Neuschwander Dep. at 30. Plaintiff, however, claims Defendant made no such efforts. Yet even construing

these facts in the light most favorable to Plaintiff and therefore assuming this aid was not proposed, there is a complete lack of evidence of causation between his requests for assistance and his cancellation from the Program, which occurred many months later and after various incidents allowing for cancellation under the Agreement Plaintiff signed. See Agreement (Ristrom Dep. Ex. 1); Standards at 13, 16 (Ristrom Dep. Ex. 2). As such, Plaintiff's retaliation claim must fail. See Palesch v. Missouri Comm'n on Human Rights, 233 F.3d 560, 570 (8th Cir. 2000) (failure to produce evidence of causal connection beyond plaintiff's unsubstantiated allegations fatal to retaliation claim).

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment [Docket No. 8] is **GRANTED**, and
2. Plaintiff's Complaint [Docket No. 1] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: February 18, 2003

# UNITED STATES DISTRICT COURT
## District of Minnesota

700 Federal Building
316 North Robert Street
St. Paul, MN 55101

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

417 Federal Building
515 West First Street
Duluth, MN 55802

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.